**HUSTEAD v. BARRON.**
No. 5510.

Circuit Court of Appeals, Third Circuit.
Dec. 27, 1934.

Joseph Levy, of Somerset, Pa., and Harry A. Cottom, of Brownsville, Pa., for appellant.

C. L. Shaver, of Somerset, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

The facts in this case are as stated by the court below in its opinion, viz.: "The United Railway Company, a Pennsylvania corporation, in the year 1911, appropriated a strip of land sixty feet in width, of a piece or parcel of land now owned by the defendant. This appropriation was made without the making of compensation or the giving of security as required by law. Defendant, subsequent to the appropriation, became the owner of said land by deeds of conveyance and also was assigned the damages arising from said appropriation. In 1926, defendant instituted viewers proceedings for the purpose of determining the damages by reason of said appropriation which resulted in final judgments in her favor in February, 1931. Prior to the entry of said judgments the Monongahela National Bank of Brownsville, Pa., issued executions on two judgments held by it against said Railway Company and on June 20, 1930, sold to said bank, by virtue of said executions, the property, real, personal and mixed, franchises and rights of said Railway Company which included an engine and a car. In April, 1931, defendant issued executions on the two judgments held by her against said Railway Company and levied upon the same property, franchises and rights as that which had theretofore been sold to the Monongahela National Bank under its executions and the said property franchises and rights were sold to defendant. Defendant took possession of the engine and car aforesaid. At the time of the sale, under the executions of the Monongahela National Bank, defendant gave notice of her interest in the said property. The Receiver of the Monongahela National Bank issued a writ of replevin in this Court to recover said engine and car by virtue thereof, the said engine and car were delivered to the plaintiff. The parties

have agreed upon a case stated, wherein the foregoing facts, inter alia, are agreed upon, and it is further agreed that if the Court be of opinion that the title and right of possession to the property in dispute is in Monongahela National Bank of Brownsville, Pa., that a judgment be entered for the plaintiff; if not, a judgment be entered in favor of defendant for the sum of $1500.00 with the provision that the defendant may, at her option, issue a writ in the nature of a writ of retorno habendo, as provided by the laws of Pennsylvania, the costs to follow the judgment and either party to have the right of appeal to the United States Circuit Court of Appeals."

Upon these facts the court held: "This Court is of the opinion that the title and right of possession to the engine and car aforesaid is in the defendant by virtue of the rule of law laid down by the Supreme Court of Pennsylvania in Western Pennsylvania Railroad Company v. Johnston, 59 Pa. 290, Lycoming Gas & Water Company v. Moyer, 99 Pa. 615, and Buffalo, New York & Philadelphia Railroad Company v. Harvey et al., 107 Pa. 319."

We avoid confusion in this case by here noting that the present case is an action of replevin involving the ownership of a locomotive and a car, and that the title or ownership of land is not here involved, and consequently the three cases relied on by the court below, which involved the title of land tortiously taken by the corporations there involved, and retained and used by a successor corporation, are not controlling as to the ownership of locomotive and car which Mrs. Barron or her predecessor never owned, but on which she claims a lien for damages growing out of land tortiously taken.

■■■ Turning to the facts, we note that when the United Railway Company in 1911 took for its right of way the strip of farm land here described without any condemnation proceedings, the title of the land remained, and still remains, in Mrs. Barron. Its entry was tortious, and the railroad was liable in trespass. Western Pennsylvania R. Co. v. Johnston, 59 Pa. 290. That title has never been divested. The railroad never having compensated her in damages or given security, the title to the land never passed from her. She is to-day the legal owner of the land, and as the buyer of the railroad ceased to use the land and abandoned it, "the ascertainment of the amount of damages sustained, and the entry of judgment therefor, under the statute, is not the payment of a just compensation. The corporation gave no bond or security for the damages before taking possession of the property. The amount of the damages is the price of the purchase of the privilege of using the land by the corporation. This sum inheres in the land. Until paid or secured, the owner of the land stands on the impregnable language of the Constitution that his private property shall not be taken." Buffalo, New York & Philadelphia R. Co. v. Harvey, 107 Pa. 323; Lycoming Gas & Water Co. v. Moyer, 99 Pa. 619. To the same effect is Philadelphia, Newtown & N. Y. R. Co. v. Cooper, 105 Pa. 241: "The legal title on the footing of a contract, remains in the owner of the land until the vendee fulfills its agreement of purchase. On that title he can maintain an action of ejectment." Mrs. Barron's remedy against the railroad was by action of trespass with recovery of damages for its use and occupation. It is true that in 1926, some fifteen years after tortious entry of the railroad, the plaintiff, the owner of the land, began proceedings against the railroad for assessment of damages, which damages were ascertained and judgment entered therefor in 1931, but it is also true that even such proceeding did not divest her title, which remained in her until the payment of her damages. In the meantime, about 1928, C. L. Snowden and others had obtained judgment against the railroad, which judgment was subsequently assigned to the Monongahela National Bank, and that bank, in 1929, obtained another judgment against the railroad. In 1930 the bank issued executions, levied and sold all the property of the railroad, including the locomotive and car here involved; the bank becoming the purchaser of all the property, real, personal and mixed, franchises, and rights of the railroad. It is clear that under the authorities quoted, the railroad never having paid for plaintiff's land, the plaintiff's land was not sold and the title remained in the title owner, and the purchaser not taking, using, or acquiring the land, but abandoning the same, the situation was wholly different from that in the cases cited. It follows the purchaser acquired no lands which Mrs. Barron could follow. At this sale plaintiff gave notice of her claim above recited. Thereupon the purchaser did not take possession of the right of way, but abandoned the same and did not operate the road. The purchasing bank having declined to accept or use the land, the plaintiff was relegated to an action of trespass against the

railroad for use and occupation. The abandonment and nonuse of the land by the purchaser bank disposed of any right vested in her to hold the bank liable for her damages.

██ What were her rights to locomotive and car? As a matter of fact, the defendant never owned the car and locomotive. She had no lien upon them, and, if it be claimed she had some sort of a lien upon them, the authorities are clear that a judicial sale divests liens. It follows, therefore, that when the bank sold the engine and car on its judgments, the buyer thereof took title thereto and became their owner. Such being the case, it follows that when the defendant subsequently levied on them as the property of the railroad, she did not divest the title of the bank to them. It follows, therefore, that under the facts of the case she had no title to the locomotive and car, and that the court erred in adjudging in the action of replevin that they were hers. So holding, the judgment below is reversed.